**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 26-cv-23293-ALTMAN**

**ADALBERTO FIANDOR FUENTES**,

*Petitioner*,

*v.*

**WARDEN, KROME NORTH,** *et al.*,

*Respondents*.

_____________________________________/

**ORDER**

Adalberto Fiandor-Fuentes filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging his continued detention in the custody of U.S. Immigration and Customs Enforcement ("ICE"). *See generally* Petition [ECF No. 1]. Fiandor-Fuentes says that his detention violates his constitutional right to due process because: (1) he has been detained "well beyond 180 days" after his re-detention on November 6, 2025; and (2) ICE hasn't shown that his removal is significantly likely in the reasonably foreseeable future. *Id.* at 2–5. The Respondents counter that Fiandor-Fuentes's detention is lawful because ICE tried to remove him to Mexico, because Mexico "has not refused" to accept him, and because the removal failed only when Fiandor-Fuentes "refused to get off the bus" at the point of entry in Hidalgo, Texas. Response [ECF No. 11] at 2, 8.[1] After careful review, we **DENY** the Petition.

**THE FACTS**

Fiandor-Fuentes, a native and citizen of Cuba, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, "challenging his continued immigration detention" in the custody of ICE. *See* Petition at 2. He says that his detention has continued "well beyond 180 days" after ICE "re-det[ained

[1] Fiandor-Fuentes has filed a reply. *See generally* Reply [ECF No. 12].

him] on November 6, 2025." *Ibid.* The Respondents answer that Fiandor-Fuentes's "refusal to cooperate with removal efforts suspends the removal period[.]" Response at 8.

Although Fiandor-Fuentes is a "native and citizen of Cuba[,]" he has lived in the United States since his admission as a "Cuban refugee" on January 9, 1972. *See* Declaration of Deportation Officer Luz Oliden ("Oliden Decl.") [ECF No. 11-9] ¶ 5; *see also* Form I-213 [ECF No. 11-1] at 2. On October 5, 1995, Fiandor-Fuentes pled guilty in our District to one count of "conspiracy to possess with intent to distribute cocaine[,]" one count of "use of a firearm during the commission of a drug trafficking offense[,]" and one count of "possession of a firearm by a convicted felon[.]" Judgment [ECF No. 11-2] at 1 (cleaned up). For these crimes, a judge on our Court sentenced him to 150 months in prison. *See id.* at 2.

Those convictions led to removal proceedings. *See* Response at 2. The Immigration and Naturalization Service ("INS") charged Fiandor-Fuentes with removability under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") and later added controlled-substance and firearms offenses under §§ 237(a)(2)(B)(i) and 237(a)(2)(C). *See* Notice to Appear [ECF No. 11-3] at 1, 3. On March 28, 2007, an Immigration Judge ordered Fiandor-Fuentes "removed from the United States to Cuba." Immigration Judge's Order [ECF No. 11-5] at 2. The Immigration Judge noted that Fiandor-Fuentes had made "no application for relief from removal" and observed that he had instead requested "an order removing him from this country as soon as possible." *Ibid.* "Because there was no appeal from that order, the removal order became final." Oliden Decl. ¶ 7 (citing 8 C.F.R. § 1241.1(a), (c)).

After the 2007 removal order, ICE held Fiandor-Fuentes in custody for several months and then released him on July 2, 2007, under an Order of Supervision. *See* Detention History [ECF No. 11-4] at 1. On November 4, 2025, Fiandor-Fuentes "report[ed] to his scheduled Order of Supervision appointment[,]" where Citizenship and Immigration Services ("CIS") served him with a "Notice of Revocation of Release" and took him "into custody without incident." Form I-213 at 2. The Notice

of Revocation explained that ICE had reviewed Fiandor-Fuentes's file and personal interview and had determined that "there is a significant likelihood of removal in the reasonably foreseeable future[.]" Notice of Revocation [ECF No. 11-6] at 1. The Notice of Revocation was accompanied by a proof of service, which reflects the fact that Fiandor-Fuentes was served on November 6, 2025, but "[r]efused to [s]ign." *Id.* at 2.

On November 25, 2025, an Immigration Judge denied Fiandor-Fuentes's request for custody redetermination because, the judge explained, he was "under an outstanding order of removal entered on March 28, 2007." Custody Order [ECF No. 11-7] at 1. Both the Department of Homeland Security and Fiandor-Fuentes waived their rights to appeal. *See id.* at 2.

On January 11, 2026, ICE served Fiandor-Fuentes with a Notice of Removal, informing him that ICE "intend[ed] to remove [him] to Mexico." Notice of Removal [ECF No. 11-8] at 1 (cleaned up). Deportation Officer Luz Oliden says that, on March 31, 2026, ICE transferred Fiandor-Fuentes "to Po[r]t Isabel Service Processing Center for removal to Mexico at the Hidalgo, Texas Point of Entry." Oliden Decl. ¶ 11. But, according to Officer Oliden, on April 3, 2026, Fiandor-Fuentes "refused to get off the bus, resulting in a failure to comply[.]" *Id.* ¶ 12. Based on this refusal, Fiandor-Fuentes was brought back to ICE custody at Port Isabel Special Processing Center, Los Fresnos, Texas, where he remained until his transfer back to Krome North Service Processing Center on April 5, 2026. *See* Detention History at 2.

The parties disagree about what the attempted removal to Mexico shows. The Respondents say that "Mexico has not refused to accept" Fiandor-Fuentes and that "[o]nce Petitioner is willing to comply with his removal, [ICE] intends to effectuate removal to Mexico." Response at 2. In Fiandor-Fuentes's view, however, the Respondents have "not established that Mexico has agreed to accept [him]." Reply at 2 (cleaned up). He also says that he "has never been a citizen of Mexico, has never resided in Mexico, and possesses no lawful immigration status in Mexico." *Ibid.* He therefore says that

his detention now exceeds the six-month threshold the U.S. Supreme Court outlined in *Zadvydas*[2] and that he should be released because the Respondents have failed to show that his "removal is significantly likely to occur in the reasonably foreseeable future." *Id.* at 1. The Respondents maintain that Fiandor-Fuentes's refusal to comply with removal efforts "suspends the removal period" and that he remains lawfully detained, pending his removal, under the provisions of 8 U.S.C. § 1231. *See* Response at 8.

## THE LAW

The federal habeas corpus statute, 28 U.S.C. § 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Cadet v. Bulger*, 377 F.3d 1173, 1181–82 (11th Cir. 2004) (quoting 28 U.S.C § 2241(c)(3)). This provision allows petitioners to challenge the legality of their "immigration-related detention, including challenges to the validity of a deportation order[.]" *Zadvydas*, 533 U.S. at 687; *see also Cadet*, 377 F.3d at 1182 ("[T]he jurisdiction-stripping provisions of AEDPA and IIRIRA did not deprive federal courts of jurisdiction to consider aliens' challenges to their removal orders raised in § 2241 habeas petitions." (citing *I.N.S. v. St. Cyr*, 533 U.S. 289, 314 (2001))).

Because "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Respondents must "limit[ ] an alien's post-removal detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689–90. According to the Supreme Court, "six months is a presumptively reasonable period to detain a removable alien awaiting deportation under such circumstances." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1051 (11th Cir. 2002) (citing *Zadvydas*, 533 U.S. at 701). The Court was quick to point out, though, that this six-month period is just a guidepost and that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably

[2] *Zadvydas v. Davis*, 533 U.S. 678 (2001).

foreseeable future." *Zadvydas*, 533 U.S. at 701. "Therefore, in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale*, 287 F.3d at 1052. If the Petitioner makes that showing, the Respondents can "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

But there's one caveat to all this: "Courts in this Circuit have consistently held that, when a habeas petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future[.]" *Lambert v. Garland*, 2023 WL 2016841, at *3 (Altman J.) (S.D. Fla. Feb. 15, 2023) (quotation marks omitted); *see also Oladokun v. U.S. Atty. Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future[,]'" because his own "non-cooperation is the only barrier to his removal." (citing *Zadvydas*, 533 U.S. at 701)); *Linares v. DHS*, 598 F. App'x 885, 887 (11th Cir. 2015) ("[The petitioner's] obstructive actions, failure to cooperate, and frequent litigation are the only reasons he remains in the United States. . . . Thus, [the petitioner] cannot demonstrate that 'there is no significant likelihood of removal in the reasonably foreseeable future[.]'" (citing *Zadvydas*, 533 U.S. at 684)); *Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015) ("[T]he district court did not err in determining that [p]etitioner's three-year detention while awaiting removal was not unreasonable[,]" where the "[p]etitioner's own acts and failure to make timely application in good faith for travel documents has prevented his removal." (citations omitted)); *Guo Xing Song v. U.S. Atty. Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013) ("The six-month period is tolled, however, if the alien acts to prevent his removal."); *Gozo v. Napolitano*, 309 F. App'x 344, 346 (11th Cir. 2009) ("However, the removal period was tolled . . . when Gozo filed for withholding of removal[.] . . . Gozo interrupted the running of time under *Zadvydas* when he

simultaneously challenged issues related to his removal order and his post-removal period detention." (cleaned up)).

## ANALYSIS

The dispute between Fiandor-Fuentes and the Respondents is simple. Fiandor-Fuentes says that his detention is unconstitutional because he's been detained for more than six months and because the Respondents have failed to show that any country is prepared to receive him. *See* Petition at 5; Reply at 3. The Respondents, by contrast, insist that Fiandor-Fuentes's detention is lawful because ICE already tried to remove him to Mexico, because Mexico "has not refused" to accept him, and because Fiandor-Fuentes thwarted his removal by "refus[ing] to get off the bus" in Hidalgo. *See* Response at 2, 8. We agree with the Respondents for two reasons.

*First*, Fiandor-Fuentes's decision to thwart his own lawful removal by refusing to get off the bus tolls the six-month period under *Zadvydas*.[3] *See, e.g.*, *Vaz*, 634 F. App'x at 782 (noting that, since the petitioner was "responsible for thwarting his removal, he [couldn't] show that there [wa]s no reasonable likelihood that he [would] not be removed in the reasonably foreseeable future if he cooperate[d]"); *Vandi*, 2022 WL 2709109, at *2 ("Petitioner's own actions—accusing an ICE officer of misconduct while boarding his flight back to Sierra Leone—have caused the delay in his repatriation; therefore, Petitioner has failed to show that the Government itself is incapable of

[3] To recap, ICE served Fiandor-Fuentes with a Notice of Removal on January 11, 2026. *See* Notice of Removal at 1. ICE then transferred him to Port Isabel for removal to Mexico. *See* Oliden Decl. ¶ 11. But, according to Officer Oliden, Fiandor-Fuentes "refused to get off the bus," resulting in a "failure to comply." *Id.* ¶ 12. Fiandor-Fuentes doesn't dispute this account; he in fact "assum[es] the Court accepts Respondents' version of events[.]" Reply at 1. He's thus forfeited any argument he could have made to contest these facts. *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."); *see also Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue [forfeits] it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented...are deemed [forfeited].").

effectuating his removal from the United States."); *Guo Xing Song*, 516 F. App'x at 899 ("The six-month period [under *Zadvydas*] is tolled, however, if the alien acts to prevent his removal.").

*Second*, Fiandor-Fuentes has failed to show that his removal isn't reasonably foreseeable. As we've said, even if Fiandor-Fuentes's detention period hadn't been tolled by his refusal to cooperate—in other words, even if he'd been detained for more than six months within the meaning of *Zadvydas*—he would still need to "provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale*, 287 F.3d at 1052. But the only evidence Fiandor-Fuentes has adduced on this point are his own assertions that Cuba remains his designated country of removal and that the Respondents haven't "produced any document from the Government of Mexico establishing that Mexico agreed to receive" him. Reply at 2. Neither assertion establishes that his removal isn't reasonably foreseeable.

For one thing, the relevant question under *Zadvydas* isn't whether Fiandor-Fuentes will be removed to his preferred country of origin. The question is whether there's "no significant likelihood of removal in the reasonably foreseeable future" to *any* country. *Zadvydas*, 533 U.S. at 701. For another, *Zadvydas* requires an assessment of reasonable "likelihood," not absolute certainty. *Ibid.* So, once Fiandor-Fuentes offers some good reason to believe that removal *isn't* reasonably foreseeable, the Respondents need only "respond with evidence sufficient to rebut that showing." *Ibid.* And the Respondents have done that here. Officer Oliden's declaration establishes that ICE served Fiandor-Fuentes with a Notice of Removal to Mexico, that CIE officials then transferred him to Texas for his removal, and that he would have been removed had he cooperated. *See* Oliden Decl. ¶¶ 11–12. Officer Oliden also confirms that Mexico has "not refused repatriation," that "diplomatic negotiations" have not ceased, and that ICE intends to effectuate Fiandor-Fuentes's removal once he's "willing[ ] to be removed" and a removal flight is approved. *Id.* ¶¶ 13–14. In these circumstances, the Respondents

have done more than enough to show a "significant likelihood of [Fiandor-Fuentes's] removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

* * *

We therefore **ORDER AND ADJUDGE** that Adalberto Fiandor-Fuentes's Petition for Writ of Habeas Corpus [ECF No. 1] is **DENIED**. All pending motions are **DENIED as moot**, and all deadlines are **TERMINATED**. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on July 10, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record
Adalberto Fiandor-Fuentes, *pro se*